CHUNG LING CO., LTD.
et al., Plaintiffs,

v.

UNITED STATES, Defendant,

and

National Knitwear and Sportswear
Association, Defendant–
Intervenor.

No. 90–10–00528.

United States Court of
International Trade.

Sept. 25, 1992.

Whitman & Ransom, Charles H. Bayar, New York City, for Chung Ling Co., Ltd. and other Taiwan plaintiffs.

Grunfeld, Desiderio, Lebowitz & Silverman, Bruce M. Mitchell and David L. Simon, Washington, D.C., for plaintiff Comitex Knitters, Ltd.

Steptoe & Johnson, Susan G. Esserman and Gracia M. Berg, Washington, D.C., for Cheonji Sanup, Inc. and other Korean plaintiffs.

Gibson, Dunn & Crutcher, Joseph H. Price, Donald Harrison, and Thomas P. Simon, Washington, D.C., for defendant-intervenor.

Office of General Counsel, U.S. Intern. Trade Com'n, Lyn M. Schlitt, Gen. Counsel, James A. Toupin, Asst. Gen. Counsel, and George Thompson, Atty.–Advisor, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

CARMAN, Judge:

### INTRODUCTION

In these consolidated antidumping actions, defendant moves to amend the interlocutory order of July 28, 1992, 805 F.Supp. 45, remanding the final affirmative injury determinations of the United States International Trade Commission, *Sweaters Wholly or in Chief Weight of Manmade Fibers from Hong Kong, the Republic of Korea, and Taiwan*, Inv. Nos. 731–TA–448, 449 and 450 (Final), USITC Pub. No. 2312 (Sept. 1990) ("ITC Report"). Defendant's proposed amendment would add to 805 F.Supp. 45 the certification required by 28 U.S.C. § 1292(d)(1) for an interlocutory appeal regarding "controlling questions of law." Alternatively, defendant seeks an enlargement of the time from 45 to 120 days in which to complete the remand proceedings, exclusive of the time the remand may be stayed pending decision of the current motion.

By previous order of this court dated August 28, 1992, defendant's motion for stay of the remand proceedings was granted. For the reasons stated hereinafter, defendant's motion to amend is denied, but an extension of time for completing the remand proceedings is granted, as discussed below. The cross-motion of Comitex Knitters, Ltd. for oral argument is denied in view of the excellent briefing submitted by counsel for the parties and in the interest of expediting the remand phase of these proceedings.

### QUESTIONS FOR WHICH DEFENDANT SEEKS CERTIFICATION

Under 28 U.S.C. § 1292(d)(1) an interlocutory order of the Court of International Trade may be appealed to the Federal Circuit, if this court certifies in the order that: "a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, [and] the United

States Court of Appeals for the Federal Circuit * * *, in its discretion, permit[s] an appeal to be taken from such order * * *."

Defendant seeks by way of amendment of 805 F.Supp. 45 a certification for immediate appeal from the remand order pursuant to § 1292(d)(1) as to essentially four basic issues:

(1) whether the Commission's producer questionnaire data base as supplemented by the Bureau of the Census data was substantial evidence on the record supporting the Commission's findings and determinations and whether the Commission articulated a sound rationale for rejecting an adverse inference against the domestic industry;

(2) whether the Commission's producer questionnaire data was skewed or "tainted" by petitioner's communications and contacts with its producer members and whether the Commission properly investigated plaintiffs' complaints of petitioner's improper interference in the investigations;

(3) whether the Commission's pricing and underselling analysis was supported by substantial evidence on the record;

(4) whether the Commission's determination regarding the "like product," based on fiber composition and the "clear dividing lines" test, was to the extent it was predicated on the finding of a minor position of blends in the U.S. sweater market, supported by substantial evidence on the record.

Defendant's arguments for certifying the foregoing issues for interlocutory appeal display a misapprehension of 805 F.Supp. 45. Therefore, the interests of judicial and administrative economy warrant a further explication of the issues remanded to the Commission.

## DISCUSSION

### I.

### PRODUCERS' QUESTIONNAIRE DATA AND ADVERSE INFERENCE

■ A pervasive evidentiary issue impacting on the Commission's final determinations under the substantial evidence standard of review is the Commission's decision to use a representative stratified sampling methodology for its producer questionnaire data base and then predicating its determinations on the sparse and incomplete producer questionnaire responses. In that connection, it must be emphasized that the Commission initially decided that because of the numerous U.S. sweater producers—in excess of 1,000—and fragmentation of the U.S. sweater producing industry, it would send producer questionnaires to only a selected representative "stratified" sampling comprised of 197 producers. Plaintiffs do not challenge the Commission's representative sampling methodology.

Despite the Commission's explicit admonitions to U.S. producers in its preliminary determinations as to the adverse consequences for noncooperation in responding to questionnaires in the final investigations, and an intense campaigning effort by petitioner to arouse the interest of its members in cooperating with the investigations, the Commission received but merely 83 responses (many incomplete)—less than half of the Commission's representative sample base. Significantly, the responding firms included only 9 producers of man-made fiber ("MMF") sweaters (the like product under investigation) accounting for only 15 percent of MMF sweater production in 1989. In the final investigations, the Commission supplemented its questionnaire data with statistics from the Census Bureau, posited that its investigation was adequate, and declined to draw an adverse inference against the domestic industry. *ITC Report* at 28; 805 F.Supp. at 48.

In 805 F.Supp. 45, this court concluded:

[E]ven the substantially increased but still low rate of response in the final investigations left the Commission with limited financial data unrepresentative of the domestic "industry" as defined by the statute.

805 F.Supp. at 48. And,

[t]he Commission, having determined to rely on sampling to obtain representative questionnaire data, erred in making find-

ings and conclusions as to many financial conditions and trends of the "industry" based merely on a small and random portion of the initial representative sampling of producers, and some producers submitted incomplete or partial responses. Such data had no pretense of being representative.

805 F.Supp. at 49.

Initially, the court wishes to correct defendant's misapprehension that in 805 F.Supp. 45 this court held that the Commission has made an "adequate" investigation. The diligence of the ITC staff in gathering the data needed for an accurate determination is essential, and in this case the court explicitly found that the Commission had *diligently* sought to make an adequate investigation. Clearly, the court is "not reviewing the ITC's diligence." *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1561 (Fed.Cir.1984). Nonetheless, due to the low rate of and incomplete responses, the producer questionnaire data was inadequate to furnish the Commission with any semblance of representative data in critical financial indicators of injury and causation. More, the court pointed out that the supplementary information resorted to by the Commission—Bureau of Census statistics—was also inadequate to supply much critical information that was required for an accurate injury determination. In short, the Commission's final investigations, while clearly "diligent," were *inadequate*.

Next, defendant erroneously expresses grave concerns that in 805 F.Supp. 45 this court engaged in *de novo* fact finding contrary to the teaching of the Federal Circuit in *Matsushita Elec. Indus. Co., Ltd. v. United States*, 929 F.2d 1577 (Fed.Cir. 1991). Defendant's concerns demonstrate confusion of the distinction between the agency's administrative role in "fact finding" and the judiciary's role on review in determining whether the *agency's* fact finding meets the statutory standard of "substantial evidence on the record." 19 U.S.C. § 1516a(b)(1)(B); 805 F.Supp. at 47.

■ Granting the Commission's unquestioned administrative prerogative as fact finder and its discretion to make reasonable judgments and inferences in interpreting evidence and determining the overall significance of any particular fact or piece of evidence, *Maine Potato Council v. United States*, 9 CIT 293, 300, 613 F.Supp. 1237, 1244 (1985), when the Commission's findings and determinations are judicially reviewed under 19 U.S.C. § 1516a(b)(1)(B) the court has a statutory duty to ascertain whether there is *substantial evidence* on the record for the agency's findings and determinations. *See* 805 F.Supp. at 47. As observed in *Atlantic Sugar*, 744 F.2d at 1561, "[i]f that evidence is insubstantial, then the reviewing court must either reverse the ITC's determination or remand the case for further fact-finding. Implicit in such a reversal or remand would be the reviewing court's finding that some person or institution, whether the parties or the ITC or all, *inadequately collected* and/or interpreted the data."

Analogous to this court's rejection of the producer questionnaire data as substantial evidence on the record, the Federal Circuit noted in *Atlantic Sugar:*

> In short, *by rejecting all of the Revere [aggregate] data*, and from there the entire industry determination, because of inclusion of figures for the Chicago plant, the lower court has thrown the baby out with the bath water. This [evidentiary finding] is not an application of the best information rule, *but rather an evidentiary and factual determination which the lower court should have made according to the substantial evidence standard,* * * *.

744 F.2d at 1562 (emphasis added).

While disagreeing with the lower court's rejection of the aggregate or firm-wide data for Revere's three plants (including the Chicago plant), the Federal Circuit never intimated that the lower court had engaged in *de novo* fact finding. To the contrary, *Atlantic Sugar* points up that the lower court's determination to reject Revere's aggregate data was "an evidentiary and factual determination which the low-

er court should have made *according to the substantial evidence standard." Id.* (emphasis added).

 Similarly, here, there is no reason whatever to characterize as *de novo* fact finding this court's rejection of the Commission's data as substantial evidence on the record. In sum, defendant has simply confused the Commission's role in *de novo* fact finding with the court's obligation to review the Commission's fact finding for substantial evidence on the record. As the court fully agrees that as a matter of law it may not engage in *de novo* fact finding, in that regard there is no certifiable issue for interlocutory appeal.

The court turns to defendant's contention that because the Commission had used "the best information otherwise available" ("BIA") under 19 U.S.C. § 1677e(b), the court erred in rejecting the Commission's data as "substantial evidence on the record." Defendant further complains that the court's ruling that the Commission's determinations are unsupported by substantial evidence impairs the Commission's right to base its determinations on BIA.

In making its determinations, the Commission must "whenever a party or any other person *refuses or is unable to produce information requested * * ** use the best information otherwise available." 19 U.S.C. § 1677e(b) (emphasis added). *See* the recent decision in *Allied–Signal Aerospace Co. v. United States*, CIT, Slip Op. 92–157, 1992 WL 246925 (Sept. 17, 1992) and cases cited. There can be no question that the Commission is allowed to—indeed *must*—use BIA "under the circumstances enumerated in the statute." *Atlantic Sugar*, 744 F.2d at 1560 ("ITC *must* use the best information otherwise available in the enumerated circumstances") (emphasis in original). While there is no suggestion in 805 F.Supp. 45 that the Commission's data was not the best information available to it, nonetheless there is no indication in the record that the Commission invoked the statutory BIA rule either against plaintiffs or in support of the Commission's determinations. Clearly, then, Commission coun-

sel's belated reliance on the BIA statute is *post hoc* rationalization.

In any event, even accepting defendant's argument that the Commission acted in accordance with law in invoking BIA, following the *Atlantic Sugar* analysis (744 F.2d at 1560–62) the issue remains concerning whether the Commission's data base for its affirmative determinations was "substantial evidence on the record." *See also N.A.R., S.p.A. v. United States*, — CIT ——, 741 F.Supp. 936, 942 (1990) (best information chosen must be supported by substantial evidence on the record).

Under the substantial evidence standard, *"the absence of information for a thorough analysis may render a determination unsupported by substantial evidence." Id.* citing *Kenda Rubber Industrial Co. v. United States*, 10 CIT 120, 630 F.Supp. 354, 358 n. 4 (1986). And in *Hannibal Industries, Inc. v. United States*, 13 CIT 202, 208, 710 F.Supp. 332, 337 (1989), the court commented:

Given the short statutory deadlines in an injury investigation and the difficulties facing the Commission in obtaining information, * * * the Commission made a reasonable effort to obtain the information needed to obtain that information. * * * *The question is not whether the Commission might have obtained additional information, but whether the determination is supported by substantial evidence on the record and according to law.*

*Id.* (emphasis added.)

 The court agrees with Korean plaintiffs that under the circumstances of this case, where plaintiffs fully cooperated with the Commission but the domestic producers largely either refused or were unable to do so, to equate BIA with substantial evidence on the record, as urged by defendant, would be preposterous. As aptly put in Korean plaintiffs' brief, p. 6 n. 4, 7:

In this case, the Commission proposes to turn BIA on is head. Instead of using BIA as a tool to induce cooperation as Commerce does, and the Commission has done in prior cases, the Commission suggests that BIA should operate as a re-

ward for the domestic industry, which failed to cooperate with the Commission. Commerce, in fact, often explains BIA as a adverse inference against a respondent for its failure to cooperate or to provide reliable data. *See e.g., Novachem, Inc. v. United States,* Slip Op. 92–149, [797 F.Supp. 1033, 1036], decided August 28, 1992, at 7, citing *Rhone Poulenc, Inc. v. United States,* 8 Fed.Cir. (T) —, 899 F.2d 1185 (1990).

\* \* \* \* \* \*

Rewarding domestic parties' refusal to cooperate by rendering an affirmative determination can only encourage such lack of cooperation, thereby requiring additional subpoenas in future investigations.

And as observed by the Federal Circuit in *Atlantic Sugar,* 744 F.2d at 1560:

*Noncooperation by parties or other persons* may, in the absence of ITC time to pursue judicial compliance, be *penalized* \* \* \* by the ITC's mandatory use of whatever other best information it may have available. In short, one may view the best information rule, *as the ITC urges,* as an investigative tool, which that agency may wield as an informal club over *recalcitrant parties or persons whose failure to cooperate may work against their best interest.*

*Id.* (emphasis added).

█ Hence, under the circumstances of this case, to affirm the Commission's determinations simply on the basis that the Commission utilized BIA without a substantial evidence analysis, as in *Atlantic Sugar,* could have the result of rewarding an uncooperative domestic industry that largely chooses not to or is unable to provide the Commission with the requested information. Even more troublesome, to invoke BIA *adversely to plaintiffs* without a finding by the Commission of any noncompliance by plaintiffs with information requests would be totally unjustified and contrary to law. In *Olympic Adhesives, Inc. v. United States,* 899 F.2d 1565, 1574 (Fed. Cir.1990), the Federal Circuit held that "section 1677e(b) clearly requires *noncompliance with an information request* be-

fore resort to the best information rule is justified, whether due to refusal or mere inability." *Id.* (emphasis in original). *See also Koyo Seiko Co., Ltd. v. United States,* — CIT —, 796 F.Supp. 517 (1992); and *Holmes Products Corp. v. United States,* — CIT —, 795 F.Supp. 1205 (1992) (use of BIA to draw inferences adverse to complying party as opposed to using BIA against uncooperative party questioned).

█ Defendant also erroneously contends that this court has placed the burden of proving material injury on the domestic industry, contrary to *Budd Company Railway Div. v. United States,* 1 CIT 67, 75, 507 F.Supp. 997, 1003 (1980). Again, it is clear that defendant has confused distinct concepts. Putting an obligation on domestic producers to respond to Commission questionnaires or suffer an adverse inference from failure to respond, does not equate with placing a "burden of proof" on the domestic industry.

Fundamentally, in an injury investigation by the Commission domestic producers have no burden of proof, *Budd Company Railway Div.,* but their cooperation in fully responding to questionnaires is essential for the Commission "to gather the data needed for an accurate determination." *Atlantic Sugar,* 744 F.2d at 1560. There is a long line of Commission precedent and judicial authority for the application of the adverse inference rule to parties and other persons who fail to respond to Commission questionnaires. *See Atlantic Sugar, Ltd. v. United States,* 4 CIT 248, 251, 553 F.Supp. 1055, 1059 (1982); *Alberta Pork Producers' Marketing Bd. v. United States,* 11 CIT 563, 580, 669 F.Supp. 445, 459 (1987).

In the past, the Commission has invoked the adverse inference rule against recalcitrant parties and not rewarded them on the basis of BIA. It was the Commission itself in its preliminary investigations that initially warned that "if the response rate by the domestic industry in any final investigations is not substantially above present levels, the Commission may reconsider the

propriety of drawing an adverse inference against the domestic industry." USITC Pub. 2234 at 17 n. 46 (Nov. 1989). By its threat to draw an adverse inference, did the Commission itself intend to put a burden of proof on the domestic industry?

Unfortunately, as pointed up by defendant, an adverse inference against the entire domestic industry necessarily punishes a domestic firm that cooperated in the investigation. But the Commission itself does not appear to be the least bit concerned, as is defendant's counsel (memorandum at 15), that by drawing an adverse inference against the *entire* domestic industry, the adverse inference rule punishes the cooperators as well as the noncooperators. In any event, no such rationale was proffered by the Commission itself in declining to draw an adverse inference, *see ITC Report*, at 28, and the rationale now adduced by Commission counsel is pure *post hoc* rationalization. The short of the matter is that 805 F.Supp. 45 imposed no more "burden of proof" on the domestic industry than did the Commission itself in its preliminary determinations warning of an adverse inference. Certification of defendant's alleged burden of proof issue for interlocutory appeal is denied.

■ Defendant also requests that the court certify for interlocutory appeal the question of whether the court erred in holding that the Commission must either further investigate or draw an adverse inference. However, again, defendant inexplicably misreads the court's order. This court's remand order did not *direct* or *compel* the Commission either to investigate or to draw an adverse inference, but *authorized* the Commission to take those actions at its discretion. Thus, 805 F.Supp. at 50, reads: "On remand, the Commission *may* conduct any further investigation *deemed warranted* * * *; and/or the Commission *may* apply the adverse inference rule against the domestic industry." In view of the difficulties experienced by the Commission due to the poor cooperation of the U.S. producers, the remand order in 805 F.Supp. 45 was couched to afford the Commission wide latitude and discretion in further investigation and/or drawing of an adverse inference.

Defendant disingenuously contends that the holding in 805 F.Supp. 45 concerning the Commission's failure to articulate a sound rationale for rejecting an adverse inference against the domestic industry revisits the question of industry support for the petition in contravention of *Trent Tube Div. v. Avesta Sandvik Tube*, 975 F.2d 807 (Fed.Cir.1992)) and *Minebea Co., Ltd. v. United States*, — CIT —, 794 F.Supp. 1161 (1992). Those cases, however, address the distinctively different issue of petitioner's standing to file the petition on "behalf of an industry," and not, as here, the evidentiary issue of drawing an adverse inference from nonresponse to questionnaires. In the current case, there is no suggestion by plaintiffs of either the petitioner's lack of standing to file the underlying petition or of dismissal of the proceedings for mootness. Accordingly, defendant's reliance on *Trent Tube* and *Minebea* as inconsistent with the holding in 805 F.Supp. 45 concerning the issue of adverse inference is totally misplaced.

## II.

## PETITIONER'S INTERFERENCE WITH INVESTIGATIONS

On the current record, another pervasive issue under the substantial evidence rubric is the integrity of the producer questionnaire data base in light of evidence strongly suggesting inappropriate contacts and communications by NKSA, the petitioner trade association, with its U.S. producer members. 805 F.Supp. at 51. This court found the perfunctory dismissal of plaintiffs' complaints to the Commission of petitioner's interference to be disturbing.

Defendant insists that on the issue of interference the court again used the substantial evidence standard to engage in impermissible "fact finding," contrary to *Matsushita*, 929 F.2d 1577, and the court substituted its judgment for that of the Commission as to whether the producer questionnaire data base was in fact skewed or "tainted."

■ The court quite agrees with defendant that the issue of the petitioner's interference in the investigation is a matter for the Commission's fact finding. Nonetheless, as with all factual findings, the Commission's fact finding on the interference issue is subject to judicial review under the substantial evidence standard.

■ In 805 F.Supp. 45, the Commission was directed on remand to *further investigate, reevaluate* whether the integrity and objectiveness of the questionnaire responses were compromised, and *reconsider* whether an adverse inference was warranted. On further consideration, due to the obvious problems inherent in data tainted by improper communications between petitioner and its members, whether any additional *investigation* should be made of the matter of interference is left to the discretion of the Commission. Remand for reevaluation of the interference issue is clearly within the court's authority, does not impinge on the Commission's fact finding role—indeed reinforces that role—and directing the Commission's *reconsideration* of whether to draw an adverse inference plainly does not deprive the Commission of its discretion in the matter. (See discussion *infra* concerning Scope of Remand Proceedings). At this juncture, no controlling question of law is presented for interlocutory appeal.

### III.

### COMMISSION'S LIKE PRODUCT DETERMINATION

■ Citing *Torrington Co. v. United States,* —— CIT ——, ——, 747 F.Supp. 744, 751 (1990), *aff'd,* 938 F.2d 1278 (Fed. Cir.1991) and other decisions, this court approved the Commission's "clear dividing lines" methodology, but held that the Commission's finding that MMF sweaters were the "like product," insofar as it was based on a finding of the minor position of blends in the U.S. market, is unsupported by substantial evidence. Defendant seeks interlocutory appeal asserting that the record as a whole supports the Commission's like product determination.

Because of the particular significance the Commission attributed to the minor position of "blends" in the U.S. market under its clear dividing lines analysis (*see* 805 F.Supp. at 56), such key finding should itself be supported by substantial evidence on the record. In 805 F.Supp. at 56, this court held that the Commission's finding of the minor position of blends in the U.S. sweater market and the significance of that fact in overall like product analysis warranted further investigation and/or reconsideration by the Commission on remand. It is the Commission's responsibility to assess *in light of the overall record* the *significance* of the position of blends in the U.S. sweater market and, in light of the current record, to what extent if any, further investigation of that factual issue is indicated. Accordingly, the court appreciates defendant's concerns that "[i]f the balance of evidence [relating to the like product factors] constitutes substantial evidence, then the determination will be affirmed." Therefore, the only issue presented is evidentiary and certification of the like product issue for interlocutory appeal is denied.

### IV.

### CONCLUSION

Contrary to defendant's misunderstanding of 805 F.Supp. 45, the remand order does not break any new legal ground. The order does not: impair the Commission's right to invoke BIA *in the circumstances enumerated in the statute;* require the Commission to either make an investigation or draw an adverse inference against the domestic industry; place the "burden of proof" for material injury on the domestic industry; revisit whether there was industry support for the petition; usurp the role of the Commission as "trier of the facts"; or ignore the "record as a whole" in determining whether the Commission's findings and determinations are supported by substantial evidence.

Further, the court rejects defendant's allegations that there is a "split in the court's approach to identical issues," that there is "divergence in authority establish[ing] con-

flicting judicial directives," and that the court's decisions provide the Commission with "conflicting directions" (memorandum at 9–10). In the current case, there is simply no disagreement whatever by the court with defendant's alleged "contrary" precedents.

■ The court concludes that the issues for which defendant seeks certification for interlocutory appeal do not involve "controlling questions of law," but rather evidentiary issues. Arguably the issues could be deemed *mixed questions of law and fact*, but even those kinds of questions should not be inflicted upon the appellate court under § 1292(d)(1). *See S.E.C. v. First Jersey Securities, Inc.*, 587 F.Supp. 535 (D.C.N.Y.1984); *Weisman v. Darneille*, 78 F.R.D. 671 (D.C.N.Y.1978) and cases cited.

Defendant's motion for an amendment of 805 F.Supp. 45 to permit an interlocutory appeal is denied.

### EXTENSION OF TIME FOR REMAND

■ In 805 F.Supp. 45, the court directed the Commission to transmit its remand results to the court within 45 days of the entry of the order, *viz.*, by September 11, 1992. As an alternative to interlocutory appeal, defendant seeks to extend the remand period by 75 days exclusive of any period the remand is stayed during the pendency of the current motions.

This request for an extension of time has merit, particularly in light of the Commission's already demonstrated intention to make substantial further investigational efforts, the domestic producers' history of noncooperation, defendant's anticipated need for issuance of numerous subpoenas, and time to pursue judicial compliance. However, the Commission's request for an extension of time from 45 to 120 days, exclusive of the temporary stay heretofore granted during the pendency of the current proceedings, would be highly prejudicial to plaintiffs. Accordingly, an extension of time is granted, but for 45 days exclusive of the time the remand has been stayed. The remand order is otherwise adhered to in all respects, except as stated herein.

### SCOPE OF REMAND PROCEEDINGS

The court is advised that pursuant to its remand order the Commission has already sent out numerous lengthy and detailed questionnaires to the domestic producers (Taiwan plft's memorandum at 5 n. 7). Taiwan plaintiffs baldly assert that it is unlawful for the Commission on remand to give questionnaire recipients who in the final investigations failed to provide requested information a "second chance" to supplement the record; and that "the proper and lawful remedy is to instruct the Commission on remand to make a new [*viz.*, negative] determination that will be supported by substantial evidence on the *existing record*" (memorandum at 6, emphasis added).

Further, Korean plaintiffs insist, without citation of authority, that the Commission's reinvestigation under this court's remand order of identical pricing and financial data from the same U.S. producers who failed to respond in the original investigation circumvents the statutory deadlines under 19 U.S.C. §§ 1673 and 1675 and such deadlines are mandatory and cannot be evaded on remand. Korean plaintiffs argue that if the court permits the Commission to make its reinvestigation, its new determinations will be "not in accordance with law." Korean plaintiffs memorandum at 5.

■ The court holds that while the statutory timetables and underlying Congressional policy considerations for expeditious investigations under the antidumping act impose an administrative curb on the scope and thoroughness of the Commission's injury investigations, such time limitations and policy considerations impose no constraint to further proceedings and reconsideration by the Commission of its original determination outside the statutory time frame when acting under the court's broad remand powers pursuant to 28 U.S.C. § 2643(c)(1). *See Borlem S.A.–Empreedimentos Industrials v. United States*, 913 F.2d 933 (Fed.Cir.1990), *aff'g*, 13 CIT 535, 718 F.Supp. 41 (1989) (remanding action); 13 CIT 231, 710 F.Supp. 797 (1989) (re-

manding action). *See also Mitsubishi Electric Corp. v. United States*, 12 CIT 1025, 700 F.Supp. 538 (1988) (remanded to ITC for "further proceedings in accordance with this opinion" where ITC had, contrary to 19 U.S.C. § 1677(4)(D), failed to request and examine reasonably available data), *aff'd*, 898 F.2d 1577 (Fed.Cir.1990); *Roquette Freres v. United States*, 6 CIT 42 (1983) (action remanded to ITC "to consider in full all relevant information presently in its possession or which *hereafter may be presented* to it as to whether an industry was materially injured"; parties permitted to "submit [to ITC] such additional information as may be relevant and material"), *results of remand*, 7 CIT 88, 583 F.Supp. 599 (1984) (on remand, ITC obtained "additional data [reflecting indicia of injury], not available to the Commission at the time of its original determination by changing the format of its producer questionnaires and further investigational efforts on remand).

While the court is fully cognizant of Congressional concerns for speedy and expeditious antidumping proceedings and Congressional policy accepting less than complete records as a trade off for speed, "there has been no showing that Congress had no concern for accuracy." *Borlem*, 13 CIT at 544, 718 F.Supp. at 48. "The mere fact that Congress was willing to grant the ITC authority to make determinations on the 'best information' available, should not be interpreted as authorizing proceedings that are so flawed with inaccurate facts that different results would obtain if accurate facts were used. * * * The broad and sweeping remand authority given to this Court by the Customs Courts Act of 1980, 28 U.S.C. § 2643(c)(1), demonstrates the concern of Congress for accuracy in these very important cases." *Id.* Moreover, the court notes the holding in *Atlantic Sugar*, 744 F.2d at 1561, that if the evidence is insubstantial, then the reviewing court must either reverse the Commission's determination *or remand the case for further fact finding.* If the *existing record evidence* is insubstantial, remands autho-

rizing further "fact finding" would, obviously, be pointless if the Commission were, as a matter of law, required to make its new determination on the existing record.

■■■ The court agrees with Taiwan plaintiffs that the specifics concerning the conduct of the remand proceedings are best resolved by consultation and agreement among the parties, but does not agree that at this juncture a scheduling order and approval of the court prior to further proceedings is necessary. The court is not oblivious to the substantial burden placed on the domestic producers who must again be called upon to cooperate with the Commission's investigation. Moreover, whether or not producers who previously failed to respond or responded incompletely should even be given a "second chance" to furnish data is a matter best left to the judgment and discretion of the Commission.

■■■ As is inherent in all standards of judicial review, the substantial evidence on the record test is highly judgmental and not susceptible to precise quantification. Under the broad terms of the remand order in 805 F.Supp. 45, the Commission must be the sole judge of what, if any, further data acquisition efforts are justified in light of the Commission's previous diligence and best efforts, the cooperation (or lack thereof) heretofore displayed by the domestic industry, the prospects for better cooperation and accurate results in the remand proceedings, and in the final analysis, the strength of the Commission's articulated conviction that its determinations on the *existing* record are supported by substantial evidence and are in accordance with the law.