**CHUNG LING CO., LTD.,**
**et al., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

and

**National Knitwear and Sportswear**
**Association, Defendant–**
**Intervenor.**

No. 90–10–00528.

United States Court of
International Trade.

Aug. 11, 1993.

Sidley & Austin, Judith H. Bello, Alan F. Holmer, and Jeremy O. Preiss, Washington, DC, for plaintiff Cheonji Sanup, Inc.

Grunfeld, Desiderio, Lebowitz & Silverman, Bruce M. Mitchell, David L. Simon, and Jeffrey S. Grimson, New York City, for plaintiff Comitex Knitters, Ltd.

Whitman & Ransom, Charles H. Bayar, Dennis James, Jr. and Kathleen F. Patterson (Charles Y.W. Chiu, New York City, of counsel), for plaintiff Chung Ling Co., Ltd.

Office of Gen. Counsel, United States Intern. Trade Com'n, Lyn M. Schlitt, Gen. Counsel, James A. Toupin, Asst. Gen. Counsel, and Andrea C. Casson, Washington, DC, for defendant.

Gibson, Dunn & Crutcher, Joseph H. Price, Judith A. Ott, Donald Harrison, and Jerry S. Fowler, Jr., Washington, DC, for defendant-intervenor.

## *OPINION*

CARMAN, Judge:

Defendant–Intervenor contests the International Trade Commission's remand results in *Sweaters Wholly or in Chief Weight of Manmade Fibers from Hong Kong, The Republic of Korea, and Taiwan,* USITC Pub. 2577, Views on Remand in Inv. Nos. 731–TA–448–450 (1992) (available on WESTLAW, ITC database) (Remand Determination). Plaintiffs and defendant seek to have the remand determination sustained. The Court retained jurisdiction over this matter during the pendency of the ITC's remand investigation.

## *BACKGROUND*

In 1990, the ITC determined that an industry in the U.S. was materially injured by

reason of imports of certain sweaters. *Sweaters Wholly or in Chief Weight of Man-made Fibers from Hong Kong, the Republic of Korea, and Taiwan,* USITC Pub. 2312, Inv. Nos. 731–TA–448–450 (1990) (1990 Determination). Plaintiffs appealed the ITC's final determination, and this Court remanded the case to the ITC. *Chung Ling Co. v. United States,* 16 CIT ——, 805 F.Supp. 45 (1992) (*Chung Ling I* ).

In *Chung Ling I,* the Court held that the 1990 final determination was not supported by substantial evidence on the record and was not otherwise in accordance with law. *Id.* at ——, 805 F.Supp. at 56. The Court remanded the case and ordered the Commission to review four broad areas: (1) producers' questionnaire data and the adverse inference rule; (2) petitioner's interference with the investigation; (3) causation; and (4) like product. *Id.* at ——, 805 F.Supp. at 50–56. The Court ordered the following concerning the adverse inference rule issue:

> On remand, the Commission may conduct any further investigation deemed warranted to obtain data representative of the [man made fiber (MMF) ] sweater producers' pricing and the financial condition of the MMF sweater "industry," as defined in the statute; and/or, the Commission may apply the adverse inference rule against the domestic industry.

*Id.* at ——, 805 F.Supp. at 50.

With respect to the issue of petitioner's interference with the investigation, the Court held:

> In sum, it is the [C]ourt's view that in these investigations NKSA exceeded permissible bounds of communication with its members in aid of the Commission's investigatory responsibilities. In view of NKSA's obviously pervasive and suggestive communications with the domestic industry and the Commission's erroneous finding of a single innocuous contact between NKSA and one of its members, a remand on the interference issue is plainly warranted. On remand, the Commission is directed to conduct a further investigation of NKSA's interference with the questionnaire responses, reevaluate whether "this is a case in which * * * objectivity

[of the questionnaire response data] has been compromised," *ITC Report* at 27, n. 77, and reconsider whether to draw an adverse inference.

*Id.* at ——, 805 F.Supp. at 52.

The Court ordered the following concerning the issue of causation:

> Due to the flawed pricing definitions in the questionnaire instructions, as described above, the record is not clear concerning that matter. Additionally, the U.S. producer pricing data was inadequate for a thorough underselling analysis. Remand for further investigation and/or clarification of U.S. producer pricing and the importers' net f.o.b. purchase prices is warranted.

*Id.* at ——, 805 F.Supp. at 54 (citation omitted).

Finally, with respect to the like product issue, the Court held:

> In short, the Commission's like product analysis is supported by substantial evidence and is otherwise in accordance with law, except as pertains to the issue of blends. The [C]ourt must agree with Taiwan plaintiffs['] contention that the Commission's finding of a clear dividing line in the U.S. sweater industry based on fiber composition predicated on the minor position of blends in the market is unsupported by substantial evidence. The Commission's finding of the minor position of blends was significant in the determination of the like product under the clear dividing line standard.... The [C]ourt holds that the Commission's like product determination, insofar as it was based on a finding of the minor position of blends in the U.S. market, is unsupported by substantial evidence and is remanded for further investigation and/or reconsideration.

*Id.* at ——, 805 F.Supp. at 56. The Court concluded *Chung Ling I* by stating that "[o]n the present agency record, the Commission's final injury determinations are unsupported by substantial evidence and are otherwise not in accordance with law." *Id.* at ——, 805 F.Supp. at 56.

On September 25, 1992, this Court issued a memorandum and order denying defendant's

motion to amend *Chung Ling I's* remand order. *Chung Ling Co. v. United States,* 16 CIT ——, 805 F.Supp. 56 (1992) (*Chung Ling II* ). *Chung Ling II* further explained the Court's remand instructions. In its discussion of "Producers' Questionnaire Data and Adverse Inference," the Court stated:

> due to the low rate of and incomplete responses, the producer questionnaire data was inadequate to furnish the Commission with any semblance of representative data in critical financial indicators of injury and causation. More, the [C]ourt pointed out that the supplementary information resorted to by the Commission—Bureau of Census statistics—was also inadequate to supply much critical information that was required for an accurate injury determination. In short, the Commission's final investigations, while clearly "diligent," were *inadequate.*

*Id.* at ——, 805 F.Supp. at 61 (emphasis in original). Continuing its discussion of the questionnaire data, the Court stated that the remand order "was couched to afford the Commission wide latitude and discretion in further investigation and/or drawing of an adverse inference." *Id.* at ——, 805 F.Supp. at 64.

The Court also reviewed its instructions regarding the Commission's like product determination.

> In [*Chung Ling I* ] this [C]ourt held that the Commission's finding of the minor position of blends in the U.S. sweater market and the significance of that fact in overall like product analysis warranted further investigation and/or reconsideration by the Commission on remand. It is the Commission's responsibility to assess *in light of the overall record* the *significance* of the position of blends in the U.S. sweater market and, in light of the current record, to what extent if any, further investigation of that factual issue is indicated.

*Id.* at ——, 805 F.Supp. at 65 (emphasis in original). The Court concluded its discussion of its remand order by stating that "[u]nder the broad terms of the remand order in [*Chung Ling I* ], the Commission must be the sole judge of what, if any, further data acquisition efforts are justified...." *Id.* at ——, 805 F.Supp. at 67.

Following remand, the ITC issued revised questionnaires to domestic producers and received briefs from the parties. The Commission subsequently unanimously determined that an industry in the United States was not materially injured or threatened with material injury by reason of the subject imports. Remand Determination at 1. Four of the Commissioners, Vice–Chairman Watson and Commissioners Brunsdale, Nuzum [1] and Crawford, had not participated in the 1990 Determination and reviewed the entire record in the remand investigation *de novo. Id.* at 1 n. 3. Chairman Newquist joined these four Commissioners, and also readopted his dissenting views from the 1990 Determination. *Id.* at 1 n. 4; *see* 1990 Determination at 55–71. Although Commissioner Rohr reached a negative determination, he did not join in the views of the other five Commissioners. Remand Determination at 1 n. 1, 47–51. Instead, he drew a "no injury" adverse inference against the domestic industry based on his finding that the financial and pricing data on the record had not measurably improved over that collected in the original determination. *Id.* at 47–53.

## CONTENTIONS OF THE PARTIES

Defendant–Intervenor, NKSA, contends that the ITC's unanimous negative determination on remand exceeded the scope of this Court's remand order. NKSA maintains the ITC exceeded the scope by making a *de novo* injury determination instead of limiting itself to supplying an institutional response to the four specific issues the Court ordered it to consider on remand. NKSA requests that this Court disregard the Commission's unauthorized and extraneous findings. According to NKSA, once these findings are disregarded, that part of the Commission's findings that NKSA claims were responsive to the specific remand issues, will support the original determination. NKSA argues in the alternative that if the Court were to accept the

---

1. Commissioner Nuzum submitted additional views in order to provide further detail of her analysis with respect to certain issues. Remand Determination at 53.

Commission's decision to consider the entire case *de novo*, the negative determination is not supported by substantial evidence and is not otherwise in accordance with law.

Plaintiffs and defendant argue that the ITC properly conducted the remand investigation within the scope of the remand order. Furthermore, plaintiffs and defendant maintain the negative remand determination is supported by substantial evidence on the record and is otherwise in accordance with law.

## STANDARD OF REVIEW

"This Court possesses the power to remand cases to the ITC pursuant to 28 U.S.C. § 2643(c)(1) (1988). The appropriate standard of review on remand is whether the ITC's remand determination is based upon substantial evidence on the record or is otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B) (1988)." *Trent Tube Div. v. United States*, 14 CIT 780, 783, 752 F.Supp. 468, 472 (1990) (*Trent Tube II*), aff'd, *Trent Tube Div. v. Avesta Sandvik Tube*, 10 Fed. Cir. (T) ——, 975 F.2d 807 (1992) (citation omitted). "Substantial evidence is something more than a 'mere scintilla,' and must be enough reasonably to support a conclusion." *Ceramica Regiomontana, S.A. v. United States*, 10 CIT 399, 405, 636 F.Supp. 961, 966 (1986), aff'd, 5 Fed.Cir. (T) 77, 810 F.2d 1137 (1987) (citations omitted).

## DISCUSSION

There are two issues before the Court: (1) whether the Commission complied with the Court's remand instructions and (2) whether the remand determination is supported by substantial evidence on the record and is otherwise in accordance with the law. *See* 19 U.S.C. § 1516a(b)(1)(B) (1988).

## A. REMAND INSTRUCTIONS

■ Defendant–Intervenor correctly states that this Court has the power both to remand an ITC determination and to set specific parameters as to what the ITC is to consider in a particular remand. Defendant–Intervenor's Brief at 6 (citing *Trent Tube*, 10 Fed.Cir. (T) at ——, 975 F.2d at 814). This Court finds, however, that the ITC has not

exceeded the limit of the remand as set by this Court.

■ NKSA contends the Commission exceeded the scope of the remand order by improperly reexamining all issues *de novo*. Thus, defendant-intervenors argue, the ITC unilaterally expanded the scope of the remand order resulting in a determination that is not in accordance with law. The Court disagrees with NKSA's argument and finds the instant issue of *de novo* review to be strikingly similar to the *de novo* review issue addressed by this Court in *Trent Tube II*, 14 CIT at 787, 752 F.Supp. at 474.

The Court remanded *Trent Tube I* to the ITC for an explanation of Chairman Liebler's method of analysis. *Trent Tube Div. v. United States*, 14 CIT 386, 403, 741 F.Supp. 921, 935 (1990) (*Trent Tube I*). The Court found that only certain parts of Chairman Liebler's determination were in error, but held the Liebler opinion *as a whole* was not supported by substantial evidence on the record and was not otherwise in accordance with law. *Id.* at 391, 741 F.Supp. at 927. On remand Commissioner Newquist, who succeeded Chairman Liebler, declined to examine Liebler's so-called "five factor" test. He considered the case *de novo* and made an affirmative finding of injury as opposed to Liebler's original finding of no injury. *Trent Tube II*, 14 CIT at 787, 752 F.Supp. at 474.

The facts of *Trent Tube* parallel those of the instant case. In both cases the Court found only certain areas of the determinations were in error, but held each determination as a whole to be unsupported by substantial evidence. In addition, based on the questions raised by the Court in each case's remand order, the new commissioners could not support the former commissioners' findings and considered the case *de novo*.

As the Court stated in *Trent Tube* in response to defendant-intervenor Avesta's argument that the ITC should follow the partial work product of Chairman Liebler:

It is not the role of this Court to diminish the fact-finding role of the agency in such a manner; such action would undermine the principal long recognized by this Court that it 'may not substitute its judgment for

that of the [agency]....' *American Spring Wire Corp. v. United States,* 8 CIT 20, 22, 590 F.Supp. 1273, 1276 (1984), *aff'd sub nom., Armco, Inc. v. United States,* 3 Fed.Cir. (T) 123, 760 F.2d 249 (1985). *The purpose of a remand generally is to require the agency to explain its determination or where appropriate, correct its determination.*

*Id.* at 780–81 n. 1, 752 F.Supp. at 469–70 n. 1 (emphasis added) (citation omitted). The commissioners in the instant case found it necessary to correct the determination. Just as the Court of Appeals for the Federal Circuit affirmed the ITC's remand decision in *Trent Tube,* this Court concludes that based on the broad language of the remand, the commissioners properly considered *Chung Ling de novo. See also SCM Corp. v. United States,* 2 CIT 1, 7, 519 F.Supp. 911, 915–16 (1981), *appeal after remand,* 4 CIT 7, 544 F.Supp. 194 (1982).

### 1. Like Product

■ In *Chung Ling I,* the Court agreed with plaintiffs' argument that the ITC's "finding of a clear dividing line in the U.S. sweater industry based on fiber composition predicated on the minor position of blends in the market" was not supported by substantial evidence. Therefore, the Court remanded this issue concerning like product for "further investigation and/or reconsideration." *Chung Ling I,* 16 CIT at ——, 805 F.Supp. at 56.

Pursuant to the remand order, the Commission further investigated the dividing line issue through the use of revised questionnaires. Those domestic sweater producers that had initially provided usable responses were asked to respond to specific questions concerning the production of blends. The Commission then reconsidered the dividing line it had drawn based on fiber composition and determined that "fiber does not serve as a 'clear dividing line.'" Remand Determination at 10 (footnote omitted). Therefore, the ITC "determined that the like product consists of all sweaters, regardless of fiber."[2] *Id.* at 8 (footnote omitted). The Court holds

the ITC's review of the like product issue did not exceed the scope of the remand order.

### 2. Producers' Questionnaire Data and the Adverse Inference Rule

■ With respect to the issue of producers' questionnaire data and the adverse inference rule, the Court in *Chung Ling I* stated that "the Commission may conduct *any further investigation* deemed warranted to obtain" the data required by the statute. 16 CIT at ——, 805 F.Supp. at 50 (emphasis added). The Court emphasized the broad latitude given the ITC with respect to this issue, stating that the remand order "was couched to afford the Commission wide latitude and discretion in further investigation and/or drawing of an adverse inference." *Chung Ling II,* 16 CIT at ——, 805 F.Supp. at 64.

As directed by the remand order, the ITC conducted further investigation by sending out revised questionnaires, asking domestic producers to provide financial and pricing information for the categories of MMF sweaters and all sweaters. Remand Determination at 5. Commissioner Rohr drew an adverse inference against the domestic industry. *Id.* at 49. The other four commissioners did not find it necessary to draw an adverse inference, and instead reached a negative determination based upon the pricing and financial information that was received in both the original and remand investigations. *Id.* at 12, 14. The Court holds that the ITC did not exceed the scope of the review in its consideration of producers' questionnaire data and the adverse inference rule.

### 3. Petitioner's Interference with Investigation

■ The Court used equally broad language in its remand of the issue of petitioner's interference with the investigation. The Court directed the ITC to "further investigat[e]" and "reevaluate" NKSA's interference with the questionnaire responses, leaving the option open for the ITC to draw an

---

**2.** Commission Rohr readopted his views on like product and domestic industry contained in the

original investigation. He thus found the like product to be MMF sweaters.

adverse inference. *Chung Ling I,* 16 CIT at ——, 805 F.Supp. at 52.

The ITC further investigated petitioner's interference by asking domestic producers a number of questions concerning contacts by NKSA. If the producers had any contacts, the ITC asked whether those contacts had influenced their questionnaire responses. Remand Determination at 5. In addition, the ITC subpoenaed NKSA, requesting it to provide information concerning any activities and/or communications it had with producers. *Id.* at 16 n. 46. The subpoena also required NKSA to supply the ITC with names of all firms which it contacted concerning the questionnaire. *Id.* The Commission concluded "that the totality of NKSA's contacts d[id] not exceed permissible informational and promotional activities designed to increase the producer response rate."[3] *Id.* at 19. The Court holds the ITC's further investigation and reevaluation of petitioner's interference with the investigation is within the scope of the remand order.

### 4. Causation

■ The Court ordered the Commission to "further investigate and/or clarif[y]" the pricing data with respect to the issue of causation. *Chung Ling I,* 16 CIT at ——, 805 F.Supp. at 54. In response to this order, the Commission "requested importers to verify or correct the pricing information they had submitted during the final investigations so that it reflected f.o.b. prices at the U.S. port of entry." Remand Determination at 6.

NKSA argues that the Commission exceeded the Court's remand instructions by reconsidering issues that the Court had already decided and thereby violated the mandate rule and law of the case doctrine. NKSA quotes the following language to support its argument: "once an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case." Defendant–Intervenor Brief at 8,

quoting *Key v. Sullivan,* 925 F.2d 1056, 1060 (7th Cir.1991). The law of the case doctrine holds that "a decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation." 1B James W. Moore et al., Moore's Federal Practice ¶ 0.404[1] (2d ed. 1992) (footnote omitted).

Defendant–Intervenor's argument is inapplicable in this case because the Court concluded in its order that "the Commission's final injury determinations [were] unsupported by substantial evidence and [were] otherwise not in accordance with law." *Chung Ling I,* 16 CIT at ——, 805 F.Supp. at 56. The Court did not expressly or by necessary implication decide the issues before it in *Chung Ling I.* Instead, the Court provided the Commission with a broad remand in order to allow the ITC to address the various areas troubling the Court.

*Chung Ling II* further explained the Court's remand instructions in *Chung Ling I.* After addressing the four areas of remand, the Court concluded by stating that "[u]nder the *broad terms* of the remand order in [*Chung Ling I* ], the Commission must be the sole judge of what, if any, further acquisition efforts are justified. . . ." *Chung Ling II,* 16 CIT at ——, 805 F.Supp. at 67 (emphasis added). Based on the above analysis, it is clear that the Commission complied with the Court's remand instructions. It is now necessary to analyze whether the conclusions the Commission reached on remand are supported by substantial evidence on the record and are otherwise in accordance with law.

### B. SUBSTANTIAL EVIDENCE ANALYSIS

Defendant–Intervenor contends that even if the Court rejects its argument that the ITC exceeded the remand instructions, the Court should still remand the matter back to the ITC because the Commission's determination is not supported by substantial evi-

---

**3.** In his "Separate Views," Commissioner Rohr similarly concluded that there was nothing improper in NKSA's activities. Remand Determination at 51. In her "Additional Views," Commissioner Nuzum stated that although "the ob-

jectivity of the information received by the Commission was not compromised," one document sent out by NKSA contained inappropriate references. Remand Determination at 53.

dence and is not otherwise in accordance with law.

"Substantial evidence 'is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Matsushita Elec. Indus. Co. v. United States,* 3 Fed.Cir. (T) 44, 51, 750 F.2d 927, 933 (1984), quoting *Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 619–20, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966) (other citation omitted).

### 1. Due Process

■ Defendant–Intervenor claims that the Commission did not spend enough time in its consideration of this case on remand and thereby deprived NKSA of its due process rights. NKSA points to the relatively short time period of the remand investigation as evidence of the Commission's failure to properly consider the case. The Court disagrees with NKSA. The 1992 determination was built upon the record and proceedings of the 1990 determination. Therefore, there was no need for a longer time period as much of the work had already been completed during the initial determination.

The Court agrees with defendant-intervenor's statement that "[n]otice and an opportunity to be heard are the foundations of due process of law." However, contrary to defendant-intervenor's contention, the Court finds that the ITC gave NKSA due process of law. NKSA received adequate notice regarding the remand. Furthermore, NKSA had ample opportunity to participate, and in fact, took full advantage of this opportunity by participating in the following ways: NKSA submitted briefs in the original investigation which became part of the record that the Commission considered; NKSA participated in the conference and hearing in the original investigation, the transcripts from which were reviewed by the Commission; NKSA comments were incorporated into the original staff report which was also reviewed by the Commission; and NKSA provided further comments in response to the remand and to new evidence introduced during the remand proceedings. *Chung Ling Transcript* at 29 (April 20, 1993).

### 2. Like Product

■ "Like product" is defined as "a product which is like, or in the absence of like, most similar in characteristics and uses with, the article subject to [ ] investigation." 19 U.S.C. § 1677(10) (1988). After being directed by the Court on remand to investigate further and/or reconsider its finding of the minor position of blends, the Commission determined that the like product consists of all sweaters, regardless of fiber. NKSA argues that the Commission's like product analysis is too short and that certain key aspects of the determination not supported by substantial evidence on the record.

The Commission found that sweaters, whether made of MMF or natural fibers, are worn for warmth and fashion. Remand Determination at 10; 1990 Determination at A–7, A–9. Consumers' purchase decisions were found to be based not only on fiber content, but on fashion and novelty features as well. Remand Determination at 10; 1990 Determination at A–11; Transcript of August 9, 1990 Hearing (R. Doc. 341) at 174–75 ("Is it the right fashion statement for them. I think that's the biggest single factor."). Additionally, the ITC determined that sweaters of all fibers are sold through the same channels of distribution. Remand Determination at 9–10; R. Doc. 341 at 166, 174–75.

In its remand analysis, the Commission determined that the general processes involved in making sweaters of any type of fiber are the same. Remand Determination at 9, citing 1990 Determination at A–9. Although production of natural fiber sweaters requires the use of additional equipment, the Commission found that the equipment could be purchased relatively inexpensively. *Id.* at 9, citing 1990 Determination at A–29 ("Petitioners commented at the hearing that, because of the current overcapacity in the sweater industry, there is a glut of used machinery on the market."). In further support of its determination, the ITC pointed to the fact that the same production and related workers, as well as the same facilities, are used in the production of both MMF and

natural fiber sweaters. *Id.*, citing 1990 Determination at A–29, A–40. The ITC further determined that MMF sweaters are priced competitively with natural fiber sweaters. *Id.* at 10 citing 1990 Determination at A–11.

■ The like product analysis is based on the unique facts of each case. *Asociacion Colombiana de Exportadores de Flores v. United States*, 12 CIT 634, 638, 693 F.Supp. 1165, 1169 (1988). The weight to be given each factor is within the ITC's discretion. However, the ITC must supply the rationale for its determination and base its determination on substantial evidence on the record. The Court holds the Commission's determination that the like product consists of all sweaters, regardless of fiber, is supported by substantial evidence in the record and is otherwise in accordance with law.

### 3. Material Injury

■ The Commission originally found the like product to be MMF sweaters and based its material injury and threat of material injury on the MMF sweater industry. However, the ITC subsequently determined on remand that the like product is all sweaters. Thus, due to the change in the relevant like product, the Commission was required to determine whether the all sweater industry is materially injured by reason of the less than fair value imports as required by 19 U.S.C. § 1673d(b) (1988). The ITC first assessed the condition of the domestic industry by considering "all relevant economic factors which have a bearing on the state of the industry in the United States...." 19 U.S.C. § 1677(7)(C)(iii) (1988). It did not, however, make a separate finding of material injury in this discussion. Instead, the Commission used its condition of the industry discussion as background information for its causation analysis and subsequently made a finding of no material injury *by reason of* the less than fair value imports.

The Commission first discussed the change in consumer preferences. It noted that there has been a shift in consumer tastes toward sweaters with more intricate designs and patterns and cotton sweaters. Remand Determination at 23, citing 1990 Determination at A–19. The ITC found that foreign producers were better able to produce "fancier sweaters requiring more handwork," whereas the domestic producers tended to produce sweaters using basic yarns and style. *Id.* at 23, citing 1990 Determination at A–69. The Commission also noted a shift towards fleecewear and other knitwear as a result of an overall decrease in consumer demand for sweaters. *Id.* at 24.

In addition, the ITC addressed the ease of entry and exit for most firms in the global sweater industry. *Id.* at 24; 1990 Determination at A–29–30. Although stating the Multifiber Arrangement does not necessarily preclude injury to the domestic industry by reason of imports, the Commission acknowledged the Arrangement's purpose of preventing market disruption in importing countries. Remand Determination at 25. After analyzing the financial data obtained on remand, the Commission found that this data revealed a mixed picture. *Id.* at 27.

Although there was a loss of domestic market share during the relevant time period, the Commission found no corresponding significant increase in market share by the subject imports. *Id.* at 30–31; 1990 Determination at A–59, Table 17. The ITC found that U.S. consumption of sweaters decreased in quantity during the relevant period. Remand Determination at 25. In addition, the substitutability of the domestic sweaters for the imported sweaters diminished as the demand for more complicated styles and special yarns increased. *Id.* at 32. Based on its analysis of these factors, the Commission found that demand for domestic sweaters would not have increased substantially had the subject imports been traded fairly.

The Commission concluded its discussion by determining that the domestic industry is not materially injured by reason of the subject imports. Despite defendant-intervenor's assertion that the Commission's discussion is based on conclusory statements, the Court holds that the Commission's determination is based on substantial evidence and is otherwise in accordance with law.

■ NKSA also argues with respect to the causation issue that the Commission's determination is not supported by substantial

evidence on the record due to the exclusion of Jia Farn Manufacturing Company's import volume figures. The Commission excluded these figures on the ground that Jia Farn received a zero margin during the Department of Commerce investigation. *Id.* at 30 n. 85. NKSA points to Commerce's initiation of a changed circumstances review to determine whether Jia Farn has changed its method of operation as reason for including Jia Farn in the instant determination. However, the period covered in the Jia Farn changed circumstances review begins after the period of investigation in the Commission's 1990 Determination and Final Determination ends. The Jia Farn review period began on April 27, 1990, whereas the period of investigation in the case before the Court ended December 31, 1989. Thus, NKSA's argument fails. *See Sweaters Wholly or in Chief Weight of Manmade Fiber from Taiwan; Initiation of Changed Circumstances Antidumping Duty Administrative Review,* 57 Fed.Reg. 43,705 (1992).

*4. Threat of Material Injury*

 The final issue to be addressed is whether the Commission's determination of no threat of material injury by reason of the subject imports is based on substantial evidence. The Commission considered the relevant economic factors in its analysis as directed by 19 U.S.C. § 1677(7)(F)(i) (1988).

The Commission found that during the period of investigation, Hong Kong and Korea virtually filled their quota limits for the subject imports and that Taiwan also had a high percentage of its quota filled. Remand Determination at 41–42; 1990 Determination at A–15. In addition, the ITC pointed out the existence of bilateral agreements between the U.S. and each of the three countries which either did not permit imminent, significant increases in subject imports (Hong Kong and Korea), or did not permit any increases at all for MMF sweaters (Taiwan). The ITC thus found the presence of the bilateral agreements would make it virtually

impossible for penetration of the subject imports to rise to an injurious level.

Neither its analysis of price suppression and depression nor its evaluation of inventories of the subject merchandise provided the Commission with evidence indicating threat of material injury. Therefore, the Commission made a negative determination regarding the threat of material injury to the domestic injury by reason of the subject imports.[4] The above discussion of the Commission's analysis demonstrates that the negative determination is based on substantial evidence and is otherwise in accordance with law.

### CONCLUSION

After considering all of defendant-intervenor's arguments, the Court holds that the International Trade Commission did not exceed the instructions of the remand order. Additionally, the Court holds that the Commission's negative final determination is supported by substantial evidence on the record and is otherwise in accordance with law. Therefore, the Court denies defendant-intervenor's motion and sustains the Commission's negative final determination in *Sweaters Wholly or in Chief Weight of Manmade Fibers from Hong Kong, The Republic of Korea, and Taiwan,* USITC Pub. 2577, Views on Remand in Inv. Nos. 731–TA–448–450 (1992).

### ORDER

This case having been duly submitted for decision and this Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

**ORDERED** that defendant-intervenor's motion is denied; and it is further

**ORDERED** that the International Trade Commission's final negative antidumping determination in *Sweaters Wholly or in Chief Weight of Manmade Fibers from Hong Kong, The Republic of Korea, and Taiwan,*

4. Commissioner Rohr, in his "Separate Views," also concluded that there was no threat of material injury to the domestic industry.

USITC Pub. 2577, Views on Remand in Inv. Nos. 731–TA–448–450 (1992) is sustained.