**AMERICAN PERMAC, INC.,
et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 91–02–00155.**

United States Court of
International Trade.

Feb. 4, 1992.

**1422**

Barnes, Richardson & Colburn (Rufus E. Jarman, Sandra Liss Friedman, and Alan Goggins), for plaintiffs.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, U.S. Dept. of Justice, Civ. Div. (Velta A. Melnbrencis), for defendant.

## OPINION

RESTANI, Judge:

This matter is before the court on plaintiffs' Rule 56.1 motion for summary judgment on the administrative record. Plaintiffs challenge the final results of the administrative review of the antidumping duty determination regarding drycleaning machinery from Germany. The review resulted in a dumping margin of 1.35 percent for machinery of the plaintiff exporter. *Drycleaning Machinery From Germany; Final Results of Antidumping Duty Administrative Review*, 56 Fed.Reg. 2901, 2902 (Jan. 25, 1991) ("*Final Results*").

Plaintiffs claim that almost all of the duties imposed are attributable to five machines which represented less than five percent of sales and which were of a design that was being replaced in the U.S. market. In fact, these five machines were the last of the particular model imported into the United States.

As this was the only model of plaintiffs which was also sold in the home market and as home market sales were made exclusively to end users as opposed to both end users and distributors, plaintiffs sought a level of trade adjustment for this model. *See* 19 C.F.R. § 353.58 (1991). The level of trade adjustment, which involved bad debt and indirect sales office expenses, was granted. *Final Results* at 2902.

Plaintiffs assert that they also requested an additional level of trade adjustment, exclusion of the sales, or some other adjustment, because sales of the model at issue were discontinued in the United States. The court finds no evidence that exclusion or some other adjustment for model discontinuance was claimed at the time the questionnaire response was submitted. Plaintiffs allege that this claim was made in its prehearing brief of December 5, 1990. Pub.Doc. 19. They also allege that there is ample factual support in the record for such a claim.

■ First, the court finds that the only claim made in the prehearing brief was for a level of trade adjustment. Furthermore, although there was a passing reference to

obsolescence, no claim was made in the brief for a level of trade adjustment based on the fact that the model had been discontinued or was "obsolete."[1] Assuming *arguendo* that the prehearing brief asked for an additional level of trade adjustment, the court fails to see how an adjustment for differences *in levels of trade in the home market versus the U.S. market* is applicable to a problem of model discontinuance in the United States. This has never been explained. Although plaintiffs might have attempted to support a circumstance of sale adjustment, (*see* 19 U.S.C. § 1677b(a)(4)(B) (1988)), or some other rational adjustment based on market differences, they did not do so. The court must conclude that plaintiffs are not entitled to an *adjustment* to U.S. or foreign market price of any type for model discontinuance because they did not support such a claim.[2]

■ The real issue is plaintiffs' alternative claim for total exclusion of these five sales based on model discontinuance. This claim was raised for the first time at the hearing of December 20, 1990. *See* Pub. Doc. 20 at 10–11. Plaintiffs' claim for exclusion is based on their theory that these machines were discontinued or obsolete and thus outside the ordinary course of trade. As the court has made quite clear, regular exclusion of sales not in the ordinary course of trade only occurs on the home-market-sales side of the price comparison. *See Floral Trade Council v. United States* ("*Floral Trade III*"), 15 CIT ——, ——, 775 F.Supp. 1492, 1503 (1991) (sales of deteriorated flowers to street vendors not excluded in calculating U.S. price; adequate adjustment made via averaging); *IPSCO, Inc. v. United States* ("*IPSCO*"), 12 CIT 384, 394–95, 687 F.Supp. 633, 641 (1988) (neither statute nor legislative history indicates Congress intended exclusion from U.S. price of all sales outside ordinary course of trade). It does not follow inexorably, however, that every U.S. sale of the merchandise under investigation must be included in every case. *See IPSCO*, 12 CIT at 395–96, 687 F.Supp. at 641–642. *IPSCO, Inc. v. United States*, 13 CIT 402, 408–409, 714 F.Supp. 1211, 1216–17 (1989); *Asociacion Colombiana de Exportadores de Flores v. United States*, 13 CIT 13, 27, 704 F.Supp. 1114, 1126 (1989) *Asociacion Colombiana de Exportadores v. United States*, 13 CIT 526, 533–34, 717 F.Supp. 834, 841 (1989).

■ The distinction is that while U.S. sales outside the ordinary course of trade ordinarily should be included (this may be the very cause of injury), a methodology is to be applied which accounts for sales which are unrepresentative and which do not lead to a fair price comparison. Fair (apples to apples) comparison is the goal of the price comparisons required by the anti-dumping laws, as the courts have stated time and again. *See e.g., U.H.F.C. Co. v. United States*, 916 F.2d 689, 697 (Fed.Cir. 1990); *Smith–Corona v. United States*, 713 F.2d 1568, 1578 (Fed.Cir.1983), *cert. denied*, 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984); *AOC International, Inc. v. United States*, 13 CIT 716, 718, 721 F.Supp. 314, 317 (1989).

■ ITA makes two arguments in response to the claim for exclusion. ITA's first argument is that plaintiffs did not request exclusion based on obsolescence and they may not request it now for the first time. In fact, plaintiffs did make the request at the hearing of December 20, 1990, for what appears to be the first time. ITA seems to have decided that such a request could not be made at that date. *See* Pub.Doc. 20 at 19 (indicating only level of trade adjustment issues were to be addressed at hearing). Furthermore, ITA did not address the exclusion issue in the final results, presumably because it thought the issue had not been timely raised.

Plaintiffs state that all factual data to support their new "legal theory" was in the record and that they may raise this "legal theory" at any time, and further that they

---

1. Apparently, the model contained "options" for pollution control that were unnecessary for the U.S. market. It was the preferred model in the home market.

2. The court does not mean to imply that a circumstances of sale adjustment would be warranted if properly claimed and supported. That issue is not reached.

were prevented from pointing out all the facts of record to support their claimed exclusion.

It appears to the court that ITA must have some latitude to control its proceedings and that it may limit the parties to making claims for adjustments or exclusions of sales to a time in advance of the final hearing. In fact, ITA's regulations provide that arguments are limited to those presented in writing prior to the hearings. *See* 19 C.F.R. § 353.38(b) (1991). This court has upheld other ITA rules intended to promote prompt and efficient factfinding in accordance with ITA's statutory mission. *See Floral Trade Council v. United States*, 12 CIT 1172, 704 F.Supp. 241 (1988) (*"Floral Trade II"*) (untimely request for below cost investigation rejected by ITA). "Absent constitutional constraints or extremely compelling circumstances the 'administrative agencies should be free to fashion their own rules of procedure....'" *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 543, 98 S.Ct. 1197, 1211, 55 L.Ed.2d 460 (1977) (quoting *FCC v. Pottsville Broadcasting Co.*, 309 U.S. 134, 143, 60 S.Ct. 437, 441, 84 L.Ed. 656 (1940)). Had plaintiffs requested exclusion of an entire group of sales prior to the hearing, they might be entitled to raise new legal theories to support such an exclusion, but the court does not believe that ITA abused its discretion when it declined to accept a new claim for exclusion at the final hearing.

ITA's second argument is that it had *no discretion* to exclude U.S. sales because this was an administrative review proceeding and not an original fair value investigation. Thus, they argue all U.S. sales must be included. It cites as support for this contention 19 U.S.C. § 1675(a)(2) (1988), which reads as follows:

**(2) Determination of antidumping duties**

For the purpose of paragraph (1)(B), the administering authority shall determine—

(A) the foreign market value and United States price of each entry of merchandise subject to the antidump-

ing duty order and included within that determination, and

(B) the amount, if any, by which the foreign market value of each such entry exceeds the United States sales price of the entry.

19 U.S.C. § 1675(a)(2). The court has a difficult time reading the "each entry" language to compel inclusion of all sales, no matter how distorting or unrepresentative. In actuality, both original investigations and periodic reviews examine sales, not entries, and the methodology is not distinguishable in any relevant way.

Furthermore, although periodic reviews set final duty rates for certain sales, they also set deposit rates for future years. They must be fair and as broadly based as possible. This court has never decided that ITA's methodology on this issue may vary in periodic reviews from that applied in original fair value investigations. The court has held that if the sales are distorting, it is unfair to include them without some methodology which compensates for the distortion. *See Floral Trade Council v. United States*, 12 CIT 1163, 1168, 704 F.Supp. 233, 238–39 (1988) (*"Floral Trade I"*). ITA seems to ignore that in *Floral Trade III*, a periodic review case, the court found that inclusion of sales of deteriorated flowers to street vendors was nondistorting because averaging adjusted for perishability. The point the court was making in allowing inclusion of street vendor sales in *Floral Trade III* was that whether sales are in or out of the ordinary course of trade is not the determinative factor on the U.S. sales side of the equation. Fairness, distortion, representativeness are the issues to be examined. The goal is to include the sales but to utilize whatever methodology is needed to ensure a fair comparison.

Whether total exclusion of certain U.S. sales is among the methodologies ITA has discretion to utilize at the periodic review phase need not be resolved here, but the court seriously doubts Congress intended to compel distortions if exclusion of a few sales would remedy the problem.

Nonetheless, the court is not implying that any distortion occurred here. Distortion is certainly not clear from the record and ITA never addressed the issue of whether discontinuance of sales of this model in the U.S. market made the sales comparison so unfair that exclusion should have been granted. Because plaintiffs did not request or support a circumstances of sales adjustment and requested the unusual remedy of exclusion of sales for the first time at the hearing on their claim for a level of trade adjustment, ITA was not required to consider it. If the exclusion claim was viable, which is not certain, it is obviously a claim which required a coherent factual presentation early on, and that was not done. ITA's determination is sustained.