## HOLMES PRODUCTS CORP. and Esteem Industries Ltd., Plaintiffs,

v.

## UNITED STATES, Defendant.

### Court No. 91–12–00906.

United States Court of International Trade.

July 24, 1992.

Dickstein, Shapiro & Morin, Arthur J. Lafave III, Douglas N. Jacobson, Washington, D.C., for plaintiffs.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Jeffrey M. Telep, David Richardson, Office of Deputy Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, D.C., of counsel, for defendant.

## OPINION

RESTANI, Judge:

Plaintiffs, Holmes Products Corporation ("Holmes") and Esteem Industries, Ltd. ("Esteem") challenge the final determination of the International Trade Administration, United States Department of Commerce ("ITA" or "Commerce") in *Oscillating Fans and Ceiling Fans From the Peoples's Republic of China*, 56 Fed.Reg. 55,-271 (Dep't Comm. Oct. 25, 1991) (final determination of sales at less than fair value) (*"Final Det."*). ITA's determination is reversed and remanded.

## FACTS

Esteem is a Hong Kong corporation that produces electric oscillating fans in the People's Republic of China ("PRC"); Holmes is a U.S. corporation that markets and imports fans made by Esteem. On October 31, 1990, an antidumping duty petition was filed with Commerce and the United States International Trade Commission ("ITC"), alleging material injury to the domestic industry due to less than fair value ("LTFV") sales of certain electric oscillating and ceiling fans from the PRC. The petition also alleged that the PRC is a nonmarket economy ("NME"), requiring resort to the NME provisions of the antidumping law. *See* 19 U.S.C. § 1677b(c) (1988).

On November 27, 1990, Commerce initiated an antidumping duty investigation. On December 17, 1990, ITC issued a preliminary affirmative injury determination, and on June 5, 1991, ITA issued a preliminary determination which found a *de minimis* dumping margin for Holmes and Esteem. *Oscillating Fans and Ceiling Fans From the People's Republic of China*, 56 Fed. Reg. 25,664 (Dep't Comm. June 5, 1991) (prelim. determination of sales at less than fair value).

In its questionnaire responses, Esteem had combined its own production information with that of Super Electric Motor Limited, an affiliated Hong Kong corporation that supplied all of Esteem's fan motors. During on-site verification, Holmes and Esteem were cooperative; however, due to an effort to sever relations with the plaintiffs, Super Electric was uncooperative, and ITA was unable to verify direct material costs for motors. Due to Super Electric's failure to cooperate, Holmes and Esteem conceded the need to use best information available ("BIA") to calculate some of Esteem's production costs. ITA chose not to reject Esteem's response and base its margin entirely on BIA because it found that Esteem "substantially complied" with its request for information. *Final Det.*, 56 Fed.Reg. at 55,279. Apparently, ITA concluded that Esteem was not controlling Super Electric's conduct. Holmes and Esteem proposed several alternatives for BIA, all of which were rejected by ITA. In the final determination, ITA used the Thai and PRC price quotations in the petition as BIA for raw material costs for motors, and the reported, unverified scrap figure as BIA for scrap costs. The result was an LTFV margin of 0.79% *ad valorem* for Holmes and Esteem.

After the disclosure conference, plaintiffs objected to ITA's methodology on the grounds that it resulted in double-counting of motor scrap and direct labor costs. Plaintiffs pointed out that the data submitted by Esteem included costs for raw materials, scrap and direct labor. When ITA substituted the finished motor price quotations in the petition for motor raw material costs, it deducted raw material costs from Esteem's figures, but did not deduct the motor scrap and direct labor costs. As these costs were almost certainly included in the price quotations, plaintiffs argued they were counted twice.

In a decision memorandum, ITA responded that it would not amend the final determination:

At disclosure, we explained to respondent's counsel that we deducted Super Electric's direct material motor costs and added the motor prices contained in the petition because Super Electric failed to cooperate at verification. We made no attempt at the final determination to break-out the hypothetical motor labor and motor scrap costs associated with the prices reported in the petition. Under this methodology, the petition motor prices were used as BIA for Super Electric's direct material motor costs.... It is our opinion that the Department should not be in the position of attempting to adjust petitioner's information using respondent's information when it is not clear that the information is comparable. For instance, we do not know how Super Electric's motor labor costs compare to the motor labor costs associated with producing the motor in the petition.

*Administrative Record*, at 437 (*Memorandum from Richard W. Moreland to Francis J. Sailer*).[1] This appeal followed.

## DISCUSSION

Plaintiffs raise two arguments: (1) selection of unverified price quotations as BIA for Super Electric's direct material motor costs was error; and (2) ITA's failure to deduct Super Electric's motor labor and scrap costs from Esteem's reported factors of production resulted in double-counting.

1. *Selection of Price Quotations as BIA*

■ In a case involving a nonmarket economy, ITA may determine foreign market value ("FMV") based on the value of the factors of production utilized in producing the merchandise, plus an amount for general expenses, profit and packing costs. 19 U.S.C. § 1677b(c)(1) (1988). The factors of production include labor hours, quantities of raw materials, and amounts of energy and other utilities. 19 U.S.C. § 1677b(c)(3) (1988). The factors of production are valued based on the prices or costs of such factors in one or more market

---

**1.** The memorandum also reveals a disagreement within Commerce as to whether it had committed an error and inadvertently double-counted motor labor and scrap costs.

economy countries at comparable levels of economic development, and with substantial production of comparable merchandise. 19 U.S.C. § 1677b(c)(4) (1988). Plaintiffs argue that the motor price quotations in the petition, which ITA used as a surrogate for the raw materials factor of production for motors, were inflated and unreliable, and that any of the alternatives proposed by plaintiffs would have been more probative of the raw material costs. Plaintiffs had proposed three alternatives: (i) labor hours verified at Super Electric (multiplied by labor cost per hour in the surrogate country, Pakistan) plus the value of the motor raw material inputs as provided by other respondents during the investigation; (ii) verified transfer prices charged by Super Electric on motors supplied to Esteem; or (iii) verified weighted-average cost of motors actually purchased by Esteem from market economy countries.

ITA has discretion as to the choice of BIA, but this discretion must be exercised reasonably. *See Timken Co. v. United States*, 11 CIT 786, 789, 673 F.Supp. 495, 501 (1987). ITA rejected use of information from other respondents so as to avoid disclosure of business proprietary information. *See* 19 C.F.R. § 353.20(e) (1991). It declined to use the transfer price of fan motors supplied by Super Electric to Esteem because Super Electric and Esteem were related companies at the time of sale. It declined to use the weighted-average cost of motors purchased by Esteem from certain market economy countries because it believed this would have given Esteem too much control over the results of the investigation, a situation which ordinarily the BIA rule prevents. *See Pistachio Group of Assoc. of Food Indus. v. United States*, 11 CIT 668, 679, 671 F.Supp. 31, 40 (1987).

The first two choices were clearly reasonable. The third choice is difficult to understand in view of ITA's finding that Esteem substantially complied with the investigation. Defendant concedes that in selecting BIA, it need not draw inferences adverse to a substantially complying party. This is in contrast to the requirement of drawing adverse inferences where an un-

cooperative party is involved, as in *Pistachio Group*. As ITA had decided that Esteem had substantially complied and that it would use Esteem's data, it appears illogical to reject other data provided by Esteem solely on the basis that this would give Esteem too much control. Furthermore, use of average data for substantially complying parties has been approved in other contexts. *See Asociacion Colombiana de Exportadores de Flores v. United States*, 13 CIT 13, 16–17, 704 F.Supp. 1114, 1117–18 (1989). Perhaps, as hinted by counsel at oral argument, this is a hybrid case, in which the normal substantial compliance rules do not apply. If so, this was not explained. ITA should consider its decision on this issue and explain the result.

Assuming there is a proper reason for rejecting the weighted-average cost of motors and preferring petition prices, ITA's choice of the petition price quotations as BIA may not be improper. Both the statute and the regulations contemplate use as BIA of information submitted in support of the petition, (19 U.S.C. § 1677e(b) (1988); 19 C.F.R. § 353.37(b) (1991)), and plaintiffs have pointed to no record evidence that leads the court to conclude that the petition price quotations were unreliable, or in themselves led to inaccurate dumping margins. *See also Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir.1990) (statutory purpose is "determining current margins as accurately as possible"); *N.A.R., S.p.A. v. United States*, 15 CIT ——, ——, 741 F.Supp. 936, 942 (1990) (use of BIA upheld if supported by substantial evidence and otherwise in accordance with law).

### 2. *Motor Labor and Scrap Costs*

■ Assuming the weighted-average cost of motors is not accepted, plaintiffs argue that the manner in which ITA used the price surrogate was improper.

Plaintiffs argue that the motor prices reported in the petition were prices for finished motors, and therefore included all material and labor costs. Thus, plaintiffs contend, ITA's failure to deduct the motor labor and scrap costs from the final FMV

resulted in double-counting of these expenses. The government concedes that double-counting occurred; it argues, however, that it was forced to resort to BIA for certain factors of production, that it had discretion to choose any reasonable information as a substitute for these factors of production, and that it intended to substitute an entire motor price for the raw material costs. Therefore, it states that no inadvertent "error" was made.

It is conceded that ITA could have used BIA for all motor costs. Instead, it chose to use BIA only for those factors of production that it was unable to verify; that is, the raw material and scrap costs. When it adopted this methodology, however, and substituted the full motor price quotations for raw material costs only, reason and logic dictated that it make an appropriate adjustment so as to avoid double counting, if possible. In this case ITA had the information to adjust for labor and, to some extent, scrap costs.[2] If ITA were truly concerned about adjusting petitioner's prices with respondent's data, even verified data, it could simply have substituted a motor price for those factors of production included in the motor price, without adding back factors already included in the overall motor price.

At oral argument, defendant insisted that the result in this case occurred because of its attempt to use a pure factor of production approach. Defendant, however, does not argue that when it was forced to utilize BIA it was prohibited from substituting motor prices for all of the relevant motor factors of production or that, if it chose to use separate factors of production for the motors, the statute prevented it from making deductions to avoid double-counting. As a respondent, and particularly as a substantially complying one, Esteem was entitled to a reasonable methodology for calculating FMV.

As has been stated time and time again, fair (apples to apples) comparison is the goal of price comparisons in the antidump-

ing law. *American Permac, Inc. v. United States*, 16 CIT ——, ——, 783 F.Supp. 1421, 1423 (1992). Double-counting is to be avoided. *See generally, Floral Trade Council v. United States*, 14 CIT ——, 775 F.Supp. 1492, 1502–03 (1991). On remand, ITA should reconsider its approach, and adopt a methodology that does not result in double-counting costs, insofar as it is reasonably avoidable. This is remanded for thirty days.

---

**2.** Scrap costs were not verified. ITA may have discretion to treat these costs differently from labor costs. If it chooses to do so, it should make its choice clear and provide an explanation.